# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00451-CV

**Arnell Ronald Manning, Jr., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. FM3-00781, HONORABLE CHARLES CAMPBELL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final order terminating appellant Arnell Manning's parental rights to a child, J.M., he fathered with Lynell Phelps.[1] *See* Tex. Fam. Code Ann. § 161.001(1), (2) (West 2002). J.M. and seven other children of Phelps were removed after the eighth child was found to have cocaine in her system at birth. Manning, the only party on appeal, presents nine issues including due process deprivations, violation of section 107.013 of the family code, and ineffective assistance of counsel related to a ten-month delay in appointment of his trial attorney; erroneous use of a broad-form submission of termination grounds; legal and factual insufficiency of the evidence;

---

[1] The Department originally brought this action to terminate the parental rights of Phelps, as to all eight of her children; Manning, as the father of J.M.; and three other men who were fathers of the other children. Phelps first agreed to permanent placement of the three oldest children in another home. Subsequently, Phelps voluntarily relinquished her rights to J.M. and the four other remaining children on the second day of trial. Manning does not assert any rights to Phelps's other children.

failure to remove the attorney ad litem and guardian ad litem for failure to perform statutory duties; and failure to disqualify the attorney ad litem due to an alleged conflict of interest. We will affirm the decree of the trial court.

## BACKGROUND

Lynell Phelps met Arnell Manning in October 1997 while they were in different drug treatment programs.[2] In March 1998, Manning was arrested for possession of cocaine and placed on deferred adjudication. *See* Tex. Health & Safety Code Ann. § 481.115 (West 2003). Manning and Phelps began living together in the summer of 1998. J.M. was born in February 1999 with cocaine in her system. At the termination trial, Phelps testified that Manning purchased cocaine for her and smoked it with her while she was pregnant with J.M. Although Manning testified he was unaware that Phelps used cocaine and denied that he used cocaine with her, he was arrested in March 1999 for possession of a controlled substance, dihydrocodeine. At the time of arrest, Manning had with him J.M., who was then one month old. The arresting officer testified that Manning smelled of alcohol and possessed pills, a crack pipe, and a diaper bag with nothing in it other than liquor. After Manning was released from jail in June 1999, he did not return to J.M. and Phelps but instead went to live with his mother in Chicago. In August 1999, Phelps and three of her children, including J.M., moved to Chicago to live with Manning and his mother. Manning returned to Texas alone in December or January 2000. Phelps and the children returned in late January. Manning's last contact with Phelps or J.M. was in April 2000, when J.M. was 14 months old.[3]

---

[2] The Department began receiving referrals related to Phelps and her children in 1992. Before J.M.'s birth, Phelps had been arrested five times for other alleged crimes.

[3] J.M. was over four years old at the time of trial.

2

When Manning returned to Texas in January 2000, he was arrested and sentenced to ten days in jail for a 1998 theft by check. *See* Tex. Pen. Code Ann. § 31.03 (West 2003 & Supp. 2004-05). He was released to a drug rehabilitation program but did not complete the program. In August 2000, he was arrested and subsequently pleaded guilty to possession of a controlled substance. In January 2002, Manning was convicted of robbery after being arrested when an officer saw him holding a scalpel to the throat of another man. *See* Tex. Pen. Code Ann. § 29.02 (West 2003).

The Department received at least ten referrals regarding Phelps and her children between October 1992 and October 2002. In October 2002, the Department received a referral alleging physical neglect of Phelps's then-seven children, including J.M. The referral also included allegations of neglectful supervision of J.M. and another sibling. Phelps was allegedly using crack cocaine, and her home was filthy. At a subsequent visit, the house was cleaned up, and Phelps later passed a drug test. The Department received additional referrals on four different occasions in January 2003, and again on February 3, 2003, reporting that the children had lice and ringworm. Additionally, one of J.M.'s siblings alleged physical abuse by another adult living in the home.

These proceedings were initiated in February 2003 after the Department was notified that Phelps's newborn eighth child had tested positive for cocaine. The Department filed its original petition on February 3, 2003, seeking termination of parental rights to Phelps's eight children. The petition lists Manning as the alleged father of J.M.[4] The petition also includes a "Notice of Right to Counsel." The notice states that

---

[4] Manning was not the presumed father of J.M. because Phelps was married to another man at the time J.M. was born. *See* Tex. Fam. Code Ann § 160.102 (West 2002).

If you are indigent and wish to oppose Petitioner's action, you should appear at the above indicated hearing prepared to show proof to the Court of your indigency and inability to hire an attorney. If you cannot appear at the hearing you should notify the District Clerk at the County Courthouse that you wish to have a court-appointed attorney.

Manning was still incarcerated at the time he received the original petition. On February 24, 2003, the trial court signed an order approving temporary removal of the children and appointing attorneys for both Phelps and another man involved in the termination proceedings.

Manning first requested a court-appointed attorney on February 26. In a letter to the district clerk, Manning stated that he was the incarcerated father of J.M. and requested legal custody and a court-appointed attorney.[5] No attorney was appointed at that time. On March 28, the court held a status hearing. The court found, among other things, that Manning "has reviewed and does understand the service plan."[6] On April 29, 2003, the case was set for trial on the merits in August of that year. The Department filed an amended petition on May 22. On June 12, in response to the amended petition, Manning sent the district clerk another request for a court-appointed attorney. On June 24, by letter to the district clerk, Manning's mother requested custody of J.M. and a court-appointed attorney for Manning. On August 11, 2003, the district court granted a motion for continuance filed by Phelps and another respondent father. On December 9, the Department filed a motion requesting that the trial court extend the dismissal date by 180 days because it "recently" became aware that Manning had filed an answer and requested a court-appointed attorney. The

---

[5] Manning testified that he also sent a letter to the Department requesting that his mother be given custody of J.M. However, the Department disputes receiving that letter.

[6] Manning received four or five family service plans which he signed and returned to the caseworker.

Department requested that the district court find Manning indigent and appoint an attorney for him. On December 15, the district court granted the motion to appoint Manning an attorney and extended the dismissal date by 180 days. However, the attorney was not appointed until January 2004, almost a year after Manning had first requested one from "the District Clerk at the County Courthouse," pursuant to the instructions he had received.

Manning was released from prison on January 31, 2004. Two days later, he appeared in court for his "Emergency Motion to Appoint Respondent [Manning] Permanency Managing Conservator" and signed a family service plan. Manning did not see J.M. at that time because he allegedly planned to return to Chicago to visit his mother that day. However, on February 5, only three days after signing the service plan and requesting managing conservatorship of J.M., Manning committed theft in Travis County, was arrested again, and subsequently pleaded guilty.[7] *See* Tex. Pen. Code Ann. § 31.03.

At a pre-trial hearing, Manning was adjudicated to be the father of J.M. The termination trial was to a jury; Phelps testified that throughout their relationship, Manning was physically abusive to both her and J.M. and that he drank, smoked crack cocaine, and stole from his mother to support his drug habit.[8] Manning testified about his criminal history and claimed to have been rehabilitated from narcotics and alcohol abuse. He also conceded that he did not think he had

---

[7] Manning was still incarcerated for this crime at the time of the termination trial, but appeared to testify.

[8] Manning denies that he was physically abusive to J.M. or Phelps.

5

been a good father to J.M. Thomas Wasden, a supervisor at Child Protective Services, testified that he believed Manning had endangered J.M. and that it would not be in the best interest of J.M. to live with Manning's mother.

The issue of termination was submitted in a single broad-form question in which the jury was instructed regarding two statutory grounds for termination—endangerment and abandonment—and best interest. Tex. Fam. Code Ann. §§ 161.001 (1)(D), (E)(N), (2) (West 2002); *see Taylor v. Texas Dep't of Protective and Regulatory Servs.*, No. 03-03-00467-CV, 2005 Tex. App. LEXIS 1793, at *12 (Tex. App.—Austin March 10, 2005, no pet.); Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: Family PJC 218.1B (2003). The jury found that Manning's parental rights to J.M. should be terminated. Answering the second question, the jury found that Manning's mother should not be appointed managing conservator. The district court then entered an order terminating Manning's parental rights to J.M. and denying Manning's mother managing conservatorship of J.M. This appeal follows.

## DISCUSSION

In Manning's first three issues, he complains that the ten-month delay in appointing his trial attorney violated his statutory and constitutional rights, or constituted ineffective assistance of counsel. In his fourth issue, he argues that the trial court erred by submitting the issue of whether his parental rights should be terminated in broad form. In his fifth and sixth issues, Manning asserts that the evidence is legally and factually insufficient to support the termination of his parental rights. Manning argues in his seventh and eighth issues that the trial court erred by failing to remove both

the attorney ad litem and guardian ad litem for statutory violations. Finally, in his ninth issue, Manning argues that the trial court erred by denying his motion to disqualify the attorney ad litem in light of an alleged conflict of interest in his dual representation of J.M. and another sibling.

**Delay in appointment of attorney**

In Manning's first issue, he complains that the trial court violated his statutory rights because it did not appoint him an attorney until ten months after his first written request and five months before trial on the merits. *See* Tex. Fam. Code Ann. § 107.013 (West 2002 & Supp. 2004-05). Texas law requires a court-appointed attorney for indigent parents opposing the termination of their parental rights. *Id.*; *see also id.* § 107.011 (West 2002 & Supp. 2004-05) (requiring appointment of guardian ad litem for child "immediately after the filing of the petition, but before the full adversary hearing"); 107.012 (requiring appointment of attorney ad litem for child "immediately after the filing, but before the full adversary hearing, to ensure adequate representation of the child"). The legislature did not mandate a specific deadline for the appointment of an attorney for the parent, and the timing of the appointment of counsel is left to the trial court's discretion. *See Salinas v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-04-00065-CV, 2004 Tex. App. LEXIS 7640, at *9-10 (Tex. App.—Austin August 26, 2004, no pet.) (not designated for publication); *see also In re J.M.C.*, 109 S.W.3d 591, 598 (Tex. App.—Fort Worth 2003, no pet.); *In re J.R.P.*, 55 S.W.3d 147, 149-50 (Tex. App.—Corpus Christi 2001, pet. denied). Because an attorney was appointed pursuant to section 107.013, there was no statutory violation. *See* Tex. Fam. Code Ann. § 107.013. We overrule Manning's first issue.

7

In his second and third issues,[9] Manning argues that due process violations, or a structural error, occurred because it was fundamentally unfair that hearings were held at "critical stages" without the appointment of an attorney despite his repeated requests. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977); *Fuller v. State*, 829 S.W.2d 548, 553 (Tex. Crim. App. 1993). Alternatively, he alleges that the late appointment resulted in ineffective assistance of counsel. *See* U.S. Const. amends. V, VI, XIV, § 2. Federal due-process rights do not always require a court-appointed attorney for indigent parents in parental-termination proceedings. *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 31-32 (1981). Instead, due process requires the application of "fundamental fairness," which depends on the facts of each particular situation.[10] *Id*. at 24-25; *see M.L.B. v. S.L.J.*, 519 U.S. 102, 117 (1996) (appointment due when warranted by character and difficulty of case). Moreover, even if due process were implicated in this case, the error must be deemed harmful for the order to be reversed on appeal. *Arizona v. Fulminante*, 499 U.S. 279 (1991); *In re M.S.*, 115 S.W.3d 534, 549-50 (Tex. 2003) (ineffective assistance claim subject to "harmless error" analysis); *see In re K.R.*, 63 S.W.3d 796, 800 (Tex. 2001) (error in shackling incarcerated father during parental termination trial subject to "harmless error" analysis); *see also* Tex. R. App. P. 44.1.

The timing of the attorney's appointment in relation to Manning's two requests is problematic. Initially, Manning could not appear at the hearing to contest the termination due to his

---

[9] Although they present discrete legal questions, the two issues were argued together.

[10] If there was no constitutional error, it cannot be a structural error. *See Neder v. United States*, 527 U.S. 1, 14 (1999) ("Under our cases, a constitutional error is either structural or it is not.").

incarceration.[11]  The termination petition was filed February 3, 2003, and sent via certified mail to Manning.  Manning's first request for an attorney was dated February 21 and filed by the district clerk on February 26.  As directed by the Department, his letter was addressed to the district clerk and specifically requested a court-appointed attorney.  Manning again requested an attorney in a letter sent to the district clerk, filed June 12.  Finally, on June 20, Manning's mother sent a letter requesting an attorney for him to a deputy district clerk.  The letter was file stamped June 24.  The Department's attorney told the trial court that she "had no knowledge of this letter until August when I pulled the district clerk's file."  However, the Department did not request an attorney for Manning until December 15.  His court-appointed trial attorney, who is also his attorney on appeal, filed an answer on his behalf in January 2004.

Assuming without deciding that the delay in this case constituted fundamental unfairness,[12] we find that any error was harmless.  Although the delay lasted almost a year after his initial request, his appointed attorney still had five months to prepare for trial.  In those five months, she represented Manning at hearings, served several discovery requests, and filed more than twelve motions, including a motion for continuance.  In the written motion for continuance filed May 10, 2004, Manning did not argue that the trial should be continued due to the delay in appointment of his attorney.  Rather, the continuance was based on the timing of the Department's supplementation

---

[11]  The record establishes that all parties were aware that Manning was incarcerated.

[12]  The trial judge admonished the Department that "ten months is just simply too long.  And that, frankly, borders on deprivation of due process that he [sic] being locked up that long and not have an attorney appointed.  Now, I think, given the nature of the case and the fact that you all complied with all of the discovery that the law requires you to comply with, that they would not be able to show harm in this case.  But at some point, when you start talking about constitutional deprivation, harm is going to be presumed."

of the record and discovery responses. The continuance was granted, and trial was delayed by approximately one month.

Furthermore, although Manning asserts harmful error because he did not have counsel present to argue that J.M. should be placed with Manning's mother, the record indicates that both the district court and the Department were made aware that his mother was interested in having custody of J.M. Manning's mother participated in a home study and intervened in the trial court. She did not, however, appear at trial[13] or appeal the jury's finding that she should not be appointed managing conservator of J.M.

Moreover, Manning claims that the absence of a court-appointed attorney, after his request, in the initial hearings regarding the placement of J.M. constituted ineffective assistance of counsel. *See In re M.S.*, 115 S.W.3d at 544-45 (right to effective assistance of counsel in parental-rights termination proceedings) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Assuming without deciding that Manning is correct, the error was harmless in this case. First, Manning had the burden of proof to show that the absence of an attorney in the early stages of the termination process prejudiced his case. *See id*. Manning's only claim of harm or prejudice relates to the absence of an attorney to advocate his position that J.M. should have been placed with Manning's mother. However, Manning had the benefit of an attorney to argue that Manning's mother should be granted some type of custody.[14] The Department, the trial court, and the jury all

---

[13] There is conflicting evidence about whether her absence was due to indecisiveness, financial restrictions, or health reasons.

[14] Although one month before trial Manning's attorney served a *pro se* plea in intervention for Manning's mother, the attorney stated at a hearing that she did not represent Manning's mother.

considered whether J.M. should be placed with Manning's mother and they explicitly found that the best interest of J.M. would be served by terminating Manning's rights and placing J.M. in a different home. Manning's attorney filed several pleadings, served requests for discovery, set hearings, requested the appointment of an expert, and was even granted second chair counsel.[15] Several hearings were held where Manning was represented by counsel, and he had the opportunity to fully present his case, including his request to appoint either him or his mother permanent managing conservator.[16] Considering the zealous efforts Manning's attorney undertook on his behalf and the fact that all parties were aware of the possibility of placing J.M. with Manning's mother, the delayed provision of counsel was not harmful error. We overrule Manning's second and third issues.

---

[15] In the five months in which she represented Manning, Manning's attorney filed, among other things, an emergency motion to place J.M. with Manning or his mother, supported by an affidavit from his mother; an original answer; special exceptions; a reply to the Department's motion to strike his special exceptions; a motion to appoint Manning's mother temporary managing conservator with brief in support; a jury demand; a first amended original answer; a motion in limine; requests for admissions; a motion for a county-funded consulting and/or testifying expert; a motion for continuance; an amended motion in limine; another motion for continuance unrelated to the timing of appointment; a motion to exclude evidence relating to a child other than J.M.; motion for leave to serve interrogatories (with attached interrogatories and a request for production); motion for appointment of second-chair counsel; addendum to Manning's motion in limine; motion to remove attorney ad litem and guardian ad litem and reply to their responses; motion to disqualify attorney ad litem; motion to leave to serve second request for production; a second amended original answer; reply to the Department's motion to strike Manning's mother's plea in intervention; motion for reconsideration of order striking discovery; motion to deem the Department's answers admitted; motion for special instructions, proposed jury questions (including a granulated issue on termination); and motion for new trial.

[16] The district court held a permanency hearing March 26, 2004. Manning was represented by counsel, and the district court found that the Department had "made reasonable efforts to finalize the permanency plan in effect for the child."

11

**Broad form submission of termination issue**

In his fourth issue, Manning challenges the district court's submission of the termination issue to the jury. Specifically, he complains that the court submitted multiple statutory grounds for termination in a single question. Manning urges that the broad-form submission enabled the jury to find that his parental rights should be terminated even if less than the requisite ten jurors agreed as to any one statutory termination ground. He asserts that this result violates state and federal law regarding the Department's burden of proof and his right to appeal the jury finding. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *but see Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). The supreme court has approved this exact form of submission in termination cases. *E.B.*, 802 S.W.2d at 649. We have noted that *E.B.* was decided in 1990, before the supreme court's more recent jurisprudence limiting the submission of valid and invalid liability theories in a single broad-form question. *Taylor*, 2005 Tex. App. LEXIS, at *12; *see Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387-90, (Tex. 2000); *see also Harris County v. Smith*, 96 S.W.3d 230, 232-34 (Tex. 2002) (*Casteel* error to submit, in single question, multiple damage elements, some of which are not supported by evidence). However, we are compelled to follow *E.B.*, which squarely addresses the issue before us, unless and until the supreme court holds otherwise. We overrule Manning's fourth issue.

**Sufficiency of the evidence**

In his fifth and sixth issues, Manning challenges the legal and factual sufficiency of the evidence supporting the jury's findings of termination on the basis that he either knowingly placed or allowed J.M. to remain in conditions or surroundings that endangered her well-being or

knowingly allowed her to remain with persons who engaged in conduct that endangered her. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E).

The court was authorized to terminate Manning's parental rights if the Department proved and the court found that (1) Manning engaged in conduct constituting a statutory ground for termination and (2) termination was in the child's best interests. *See* Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d at 23 (Tex. 2002); *Taylor*, 2005 Tex. App. LEXIS 1793, at *7. Although several statutory grounds for termination were submitted to the jury, the Department was required to establish only one to satisfy the first element of the termination standard. *See Green v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.); *In re D.G.*, 5 S.W.3d 769, 771 (Tex. App.—San Antonio 1999, no pet.). To terminate parental rights, the Department must prove each element by clear and convincing evidence. "Clear and convincing" evidence is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction in the truth of the allegations supporting termination. Tex. Fam. Code Ann. § 101.007 (West 2002); *In re C.H.*, 89 S.W.3d at 23 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)).

In reviewing the legal sufficiency of the evidence under the clear and convincing standard, we consider all of the evidence in the light most favorable to the finding and determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We review the factual sufficiency of the evidence under the clear and convincing standard by viewing all of the evidence and determining whether a reasonable fact-finder could have resolved disputed evidence in favor of its finding. *Id.*

13

If the disputed evidence is such that a reasonable fact-finder could have formed a firm belief as to the truth of the Department's allegations, the evidence is factually sufficient. *Id.*; *In re C.H.*, 89 S.W.3d at 25. These standards of review maintain the appropriate deference to the fact-finder's role by assuming that it resolved evidentiary conflicts in favor of its finding when it was reasonable to do so and by disregarding evidence that it could have disbelieved. *In re J.F.C.*, 96 S.W.3d at 266-67.

### Termination grounds

To prove endangerment under subsection D, the Department had to prove that Manning (1) knowingly (2) placed or allowed J.M. to remain (3) in conditions or surroundings that endangered her physical or emotional well-being. *Id.* § 161.001(1)(D). The degree of endangerment required for involuntary termination is "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but the child does not need to suffer actual physical injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Instead, "endanger" means to "expose to loss or injury; to jeopardize." *Boyd*, 727 S.W.2d at 533. Moreover, the parent need not have actual knowledge of an injury or certain knowledge that an injury to the child will result; it is enough that the parent is aware of the potential danger to the child and that the parent disregards the risk. *In re S.G.S.*, 130 S.W.3d 223, 238 (Tex. App.—Beaumont 2004, no pet.).

Under subsection E, the Department had to prove that Manning (1) engaged in conduct or knowingly placed J.M. with persons who engaged in conduct (2) which endangered her physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(1)(E). Under subsection D, the danger to the child results from the child's environment, but under subsection E the parent's conduct

14

is the source of the danger to the child. *In re D.C.*, 128 S.W.3d 707, 715 (Tex. App.—Fort Worth 2004, no pet.); *Robinson v. Texas Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 686 (Tex. App.—Houston [1st Dist.] 2002, no pet.).[17]

Imprisonment alone does not constitute engaging in conduct which endangers the emotional or physical well-being of a child. *See Boyd*, 727 S.W.2d at 533-34. However, a parent's repeated criminal acts may constitute sufficient evidence of conduct that endangers the well-being of a child. *In re J.N.R.*, 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.), *disapproved on other grounds by In re C.H.*, 89 S.W.3d at 24-25; *see also* Tex. Fam. Code Ann § 161.001(1)(E); *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.). Illegal drug use in the child's household constitutes surroundings that endanger the well-being of the child under subsection D. *In re D.C.*, 128 S.W.3d at 715-16; *In re S.D.*, 980 S.W.2d 758 (Tex. App.—San Antonio 1998, pet. denied). Violent or abusive conduct by someone within the household also constitutes an environment that endangers children. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied); *In re D.C.*, 128 S.W.3d at 715; *Director of Dallas County Child Protective Servs. Unit v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ). If the evidence, including the imprisonment, shows a course of conduct that has the effect of endangering the physical or emotional well-being of the child, it can support a finding of endangerment. *See Boyd*, 727 S.W.2d at 534.

---

[17] *See also Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, No.. 03-04-00284-CV, 2005 Tex. App. LEXIS 1815, at *19-20 (Tex. App.—Austin 2005, no pet.) (not designated for publication).

15

Phelps testified that Manning repeatedly physically abused both her and J.M. and that he "is a danger to a lot of people, not just to" J.M.[18] Manning's criminal history is well documented, including the fact that he was arrested once while with J.M., and once only a few days after signing the family service plan. In the first five years and four months of J.M.'s life, Manning was incarcerated for two years and four months. In January 2000, Manning entered a drug rehabilitation center "to continue recovery."[19] The last time Manning saw J.M. was April 2000. Although Manning introduced evidence that he has completed rehabilitation programs, the jury found that his rights should be terminated. The jury could have reasonably formed a firm conviction or belief that Manning's actions constituted endangerment. *See id*. Furthermore, the jury could have resolved the disputed evidence in favor of the Department and formed a firm belief that the finding of endangerment was true. Because we have found the evidence legally and factually sufficient to sustain the termination on the statutory ground of endangerment, we need not reach the issue of abandonment. *See Schexnider v. Texas Dep't of Family & Protective Servs.*, No. 03-03-00298-CV, 2005 Tex. App. LEXIS 2648, at *10 (Tex. App.—Austin April 7, 2005, no pet. h.) (memo op.)

### Best interest of J.M.

Next, Manning challenges the finding that termination of his rights was in the best interest of J.M. Some of the common factors used to evaluate the best interests of a child are: (1)

---

[18] Phelps testified that Manning choked her one month before J.M. was born, hit her in front of other children, and that his subsequent physical abuse of J.M. left marks and bruises on J.M. Manning denied Phelps's claims in his testimony.

[19] Manning testified that he did not actually have an active drug problem but lived at the rehabilitation center for four to five months merely because it provided shelter and employment.

16

the emotional and physical needs of the child now and in the future; (2) any emotional and physical danger to the child now and in the future; (3) the parental abilities of the individuals seeking custody; (4) the programs available to assist those individuals to promote the best interest of the child; (5) the plans for the child by those individuals or by the agency seeking custody; (6) the stability of the home or proposed placement; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 321 (Tex. App.—Austin 2000, no pet.); *Taylor*, 2005 Tex. App. LEXIS 1793, at *7-8. This is not an exhaustive list; other factors also may be considered where appropriate. *Holley*, 544 S.W.2d at 372.

Manning asserts that it would be in the best interest of J.M. to live with Manning's mother. Thomas Wasden, Department supervisor, testified that the Department requested a home study on Manning's mother in July 2003 and concluded that placement with her would not be in the best interest of J.M. Specifically, Manning's mother was not aware of why her son was in prison or of the circumstances that led to removal of the children from the home. Furthermore, Wasden was concerned that the mother may have been aware of domestic violence and alleged drug use when Manning and Phelps lived with his mother in Chicago but did not report that to anyone or follow up to ensure J.M.'s safety. Finally, Wasden testified that J.M. had a strong bond with another sibling and it would be in J.M.'s best interest to be close to that sibling in Texas rather than with a grandparent she never knew in Chicago.[20] The jury could have reasonably formed a firm conviction

---

[20] J.M. and her sibling were placed in the same foster home.

17

or belief that terminating Manning's parental rights was in J.M.'s best interest and resolved the disputed evidence in favor of the Department. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). We overrule Manning's fifth and sixth issues.

**Removal or disqualification of the attorney ad litem and guardian ad litem**

In his seventh and eighth issues, Manning argues that the trial court erred in denying his motion to remove the attorney ad litem and guardian ad litem based on their failure to sufficiently interview him and his mother.[21] We review the denial of the motions to disqualify under an abuse of discretion standard. *See In re Chu*, 134 S.W.3d 459, 465 (Tex. App.—Waco 2004, no pet.); *In re J.N.F.*, 116 S.W.3d 426, 437 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987). The complaining party has the burden of proof. *Id.*; *see Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex. 1968). In the absence of proof in the record, there is a presumption that the evidence before the trial judge was adequate to support the decision. *Id.*; *see Mays v. Pierce*, 281 S.W.2d 79 (1955).

---

[21] The Department and attorney ad litem argue that Manning lacks standing to challenge the attorney ad litem and guardian ad litem because the Department had temporary conservatorship. However, we do not reach that issue because we find that the trial court did not abuse its discretion in refusing to remove or disqualify the ad litems.

The original petition in this case was filed in February 2003, when the procedure for objection to and removal of an attorney ad litem was governed by former family code section 107.006. *See* Act of May 28, 1999, 76th Leg., R.S., ch. 1515, § 1, 1999 Tex. Gen. Laws 5237, 5237 (repealed 2003). Under the former provision, a party to the proceeding filed a written objection, and upon a finding that the objection was justifiable, the judge ordered removal. *See id.* Former family code section 107.014 required an attorney ad litem representing a child to interview all parties to the suit and individuals with significant knowledge of the child's history and condition[22] within a reasonable time after the appointment. *See id.* (current version at Tex. Fam. Code Ann §§ 107.002-.003 (West 2002 & Supp. 2004-05).

The attorney ad litem notified Manning's attorney that he had not personally interviewed Manning and offered to set up an interview. A student attorney ad litem spoke with Manning about the case, and in a handwritten note sent with the response to the motion to disqualify, the attorney ad litem offered to "further interview" Manning if requested. There is no indication that Manning ever accepted that offer. We hold that the attorney ad litem performed his statutory duty by interviewing Manning and offering to speak with him again. The trial court did not abuse its discretion in denying the motion to remove the attorney ad litem. We overrule Manning's seventh issue.

---

[22] Manning argues that he and his mother had significant knowledge of J.M.'s history and condition and should have been interviewed by the attorney ad litem and guardian ad litem. However, at the time of trial, neither Manning nor his mother had seen or otherwise had contact with J.M. for over two years.

Similarly, Manning testified that he spoke with the guardian ad litem, CASA Supervisor Kerri Smith. In an affidavit, Smith stated that she interviewed Manning in the presence of his attorney and explained her role in the case at the courthouse following a scheduled hearing. Smith and Manning discussed topics such as his living arrangements and if he planned to meet the caseworker to discuss the service plan. Manning told Smith that he planned to move to Chicago, and Smith provided him with her business card and told him to call if he had questions. Manning stated that he understood and would call if he had questions. Furthermore, the guardian ad litem testified regarding conversations with Manning's mother. In light of evidence that Manning and his mother were interviewed by the guardian ad litem, the trial court did not abuse its discretion by refusing to remove her. We overrule Manning's eighth issue.

In his ninth issue, Manning argues that the trial court erred by failing to disqualify the attorney ad litem due to an alleged conflict of interest arising from his dual representation of J.M. and another sibling because J.M. had family requesting custody, while the other sibling did not. In the alternative, Manning asserts that the dual representation was ineffective assistance of counsel. Disqualification is a severe remedy which should not be granted based on mere allegations of unethical conduct or a remote possibility of violation of the disciplinary rules. *See In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004). Even if a disciplinary rule was violated, Manning must demonstrate that the attorney ad litem's conduct caused actual prejudice that requires disqualification. *In re B.L.D.*, 113 S.W.3d 340, 347 (Tex. 2003). We review a trial court's determination of whether there

was a conflict of interest for an abuse of discretion. *Id.*; *see Metro. Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex. 1994). Standing alone, the fact that J.M.'s family is involved in this suit while the other sibling's father is unidentified does not show actual prejudice caused by the dual representation. Manning offers no evidence of prejudice to support his claim. The trial court did not abuse its discretion in refusing to disqualify the attorney ad litem. We overrule Manning's ninth issue.

## CONCLUSION

Having overruled Manning's issues on appeal, we affirm the decree of termination.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: May 12, 2005

21